SQUAW ISLAND FREIGHT AND TERMINAL COMPANY, INC., Plaintiff,
v. CITY OF BUFFALO, Defendant.

Supreme Court, Erie County, October 30, 1928.

*Desbecker, Fisk & Newcomb [Walter Newcomb of counsel], for the plaintiff.*

*Gregory V. Harmon [Frank C. Westphal of counsel], for the defendant.*

CROSBY, J. This is an action in equity brought to restrain defendant from continuing to discharge sewage into the Niagara river, and demanding $775,000 damage to plaintiff's property, known as Squaw Island, by sewage already discharged into said river, and, by action of the current, carried onto and around the island, and there deposited in such a way as to completely ruin the island for the purpose for which it was used, namely, the taking of sand and gravel for commercial purposes.

The plaintiff claims to own something like 119 acres of island, slightly above water level, and considerably more land under water. The island, both above and below water, yields a good quality of sand and gravel for building purposes. Plaintiff further claims that seven or eight feet of solid sewage, practically all from the city's sewers, now completely covers the margin of the island, like a blanket, around the entire circumference of the island. Plaintiff claims that the whole island is thereby spoiled for sand purposes, for the reason that the only practical and economical way to take the sand is by means of a sand-sucker boat, drawing the sand up from underneath the surface of the water. Plaintiff claims, too, that the high water has also carried considerable sewage over the entire surface of the island.

Several interesting questions both of law and of fact are presented which need not be decided at this time for the reason that we are met, at the outset by a vital matter that does not go to the merits of the case.

The plaintiff did not present its claim to the proper officers of the defendant, as provided by the latter's charter, before commencing suit. The question here presented was raised by the defendant on the trial but was not then thoroughly examined by the court.

Defendant relied upon the case of *Reining* v. *City of Buffalo* (102 N. Y. 308) for its contention that plaintiff could not bring its action without first serving notice of its claim as provided by the charter of the city of Buffalo. At the time that case was decided the charter provision was: " No action or proceeding to recover or enforce any such claim against the city shall be brought until the expiration of forty days after the claim shall have been presented to the common council for audit, in the manner and form aforesaid." (Laws of 1870, chap. 519, tit. 3, § 7.)

The charter (Laws of 1914, chap. 217, § 341) now reads the same excepting that in place of the words, " claim shall have been presented to the common council," the charter now reads, " claim shall have been *filed with the city clerk for presentation* to the council *for audit*, in the manner and form provided."

The court, in the *Reining* case, said in its opinion: " It [the charter] absolutely forbids the prosecution of any action until the proper demand has been made. It attaches to all actions whatsoever, and by force of the statute becomes an essential part of the cause of action, to be alleged and proved as any other material fact."

We will now consider each of the cases, cited in plaintiff's brief, upon which plaintiff relies to take the instant case out of the operation of the clear and emphatic decision of the Court of Appeals in the *Reining* case. We will also consider every other case which the court, by its own industry, has been able to find in which the *Reining* case has been considered. I think we shall find that the *Reining* case is, today, the law for all actions against the city of Buffalo.

(*Ahrens* v. *City of Rochester*, 97 App. Div. 480, cited in plaintiff's brief.) In that case plaintiff sued for damages for overflow of sewage due to defective construction of sewers. Apparently injunctive relief was also asked. So far as our present question is concerned, all that case decided was that, in this kind of a case, the right to sue did not depend upon serving a notice of claim where

section 461 of the charter of second class cities (Laws of 1898, chap. 182, as amd. by Laws of 1899, chap. 581), known as the "White Charter," required that "All claims against the city for damages or injuries to person or property alleged to have been caused by the misfeasance or negligence of the city, or any of its officers or employees, shall be presented to the common council, in writing, within three months after the happening of the *accident or injury* out of which the claims arose." (Italics mine.) The words in italics sufficiently indicate the kind of claims notice of which should be given before suit against the city. The requirement of the Buffalo charter is vastly more comprehensive. The *Ahrens* case also holds that "depreciation of rental value" is the correct measure of damages.

(*Gerow* v. *Village of Liberty*, 106 App. Div. 357, 359, cited in plaintiff's brief.) That was an equity action to restrain the nuisance occasioned by the offensive odors from a sewage disposal plant. The question of incidental damages was sent to a jury for trial. The trial court adopted the jury's award of damages and granted an injunction against the nuisance. The Appellate Division held that the proper rule of damages was the depreciation in rental value (citing *Francis* v. *Schoellkopf*, 53 N. Y. 152); and, as to the question of necessity of notice of claim, held that (then) section 322 of the Village Law had "no application to a suit on the equity side of the court for relief from an alleged nuisance." A reading of that section is sufficient to show that the *Gerow* case does not disturb the force of the case of *Reining* v. *City of Buffalo*.

(*Lamay* v. *City of Fulton*, 109 App. Div. 424, cited in plaintiff's brief.) In that case the defendant changed the grade of a street so as to cause water and mud to flow onto plaintiff's land. Plaintiff's complaint asked for damages and injunctive relief. A demurrer to the complaint, on the ground that notice had not been alleged to have been given, was overruled. The charter of the city of Fulton (Laws of 1902, chap. 63, § 230) required notice to be given of "a claim, debt or demand" before suit. The Appellate Division sustained the decision of the trial court. Again it is seen how different was the provision of the charter of the city of Fulton from that of the city of Buffalo.

(*Sammons* v. *City of Gloversville*, 175 N. Y. 346, cited in plaintiff's brief.) That case, in its facts, is singularly like the case at bar. But the Gloversville charter provision (Laws of 1899, chap. 275, § 56) was vastly different from the charter of Buffalo. Note the language: "All claims of injuries to the person alleged to have been caused or sustained by reason of defects, want of repair, or obstruction of any of the highways, streets, alleys, sidewalks, or

crosswalks of the city, and *all claims for damages* alleged to have occurred by reason of the wrongful act or neglect of the city or any of its officers, agents, or employees, shall be presented in writing to the common council within three months after the date of the alleged injuries," etc. (Italics mine.)

The court holds that this language is " too inapt to convey \* \* \* an intention," by the Legislature, that a notice is required before bringing suit to restrain a nuisance. That seems clear. It is also to be noted that in *Sammons* v. *City of Gloversville*, the *Reining* case is not even mentioned by the court; much less criticised or even distinguished. It is not even cited in brief of counsel.

There is also this distinction between the *Sammons* case and the case at bar. In the former case the court, in its opinion, said: " While this action comprehended a recovery of the damages already sustained, its demand was for equitable relief. That is its *main object* and the damages are, *purely, incidental* to the preventive relief, which is prayed for." (Italics mine.) In the instant case the damages can scarcely be said to be " purely incidental," notwithstanding the form of the complaint nor injunctive relief the " main object." Plaintiff's proof tends to show that the plaintiff's island has been completely destroyed, and plaintiff's damages were computed upon the basis of the value of every cubic yard of sand in the island above and below water. Plaintiff's proof also tends to prove that the destruction is complete and irremediable. An injunction restraining further discharge of sewage into the river could not benefit plaintiff. Under plaintiff's proof, as it stands, an injunction would do the plaintiff as little good as one forbidding the cutting down of a tree that had long since been felled. In so stating the matter, consideration is had only of the plaintiff's proofs and plaintiff's theory of the case. A judgment for damages is the only remedy a court could give that would not be a mockery to plaintiff. And in the present state of the proof it would be difficult to state what damages should be given; even could we see our way around defendant's objection that the required notice had not been served. Defendant did not offer proof to combat the large amount of damage plaintiff claimed to have suffered. Furthermore, while it seems certain that defendant's sewage occasioned most of the damage complained of, it is equally clear that some slight fraction at least of the pollution was caused by other means. This case ought to be tried as a law action; or, at least, the damages ought to be assessed by a jury.

In plaintiff's supplemental brief two other cases are cited upon the question whether notice is required under the Buffalo charter;

*Murcott* v. *City of New York* (181 App. Div. 171); *Penfield* v. *City of New York* (115 id. 502).

The *Murcott* case was an equity action to restrain a nuisance caused by overflow of sewage. It had been preceded by a law action for the damage, in which plaintiffs had recovered, and in which it had been adjudicated that the sewer was illegally constructed. The court, in its opinion, suggested that the injunctive relief and the damages might have been obtained in one equity action, and that no service of notice of claim upon the comptroller would have been necessary before bringing such action. In support of that statement the court cites the cases of *Sammons* v. *City of Gloversville* and other cases hereinbefore considered.

There is nothing in this case that impeaches the validity of the decision of *Reining* v. *City of Buffalo*. The reason why this is so is clearly pointed out in the other case cited in plaintiff's supplemental brief. (*Penfield* v. *City of New York, supra.*) That was a case in which plaintiff sued for injunction and incidental damages, alleging that defendant discharged sewage into an open watercourse running through plaintiff's land. A temporary injunction was denied by the Special Term, relying upon the authority of *Matter of Cox* v. *City of New York* (26 Misc. 177). In affirming the Special Term order the Appellate Division said: " Notwithstanding the authority relied upon by the court below (*Matter of Cox* v. *City of New York*, 26 Misc. 177) we apprehend that we should find some difficulty in sustaining the order appealed from if it rested upon no surer foundation than the section of the charter above quoted. While that section refers to any ' action or special proceeding for any cause whatever,' the latter portion of the section  *  *  *  suggests that the reference is really to actions or special proceedings brought to enforce demands or claims *capable of adjustment or payment by the comptroller.*" (Italics mine.) The words in italics suggest the reason for the decision in all the New York and Brooklyn cases cited in the plaintiff's brief, as well as of some of the other cases cited by plaintiff. And all the cases relied upon by plaintiff arise under charter provisions unlike those of the Buffalo charter. And in not a single case relied upon by plaintiff is the case of *Reining* v. *City of Buffalo* in any way criticised. It stands as the law today in all actions against the city of Buffalo.

But let us return to the question whether or not the clear and concise decision in *Reining* v. *City of Buffalo* (102 N. Y. 308) has ever been disturbed. It has once been considered by the Court of Appeals in *Harrigan* v. *City of Brooklyn* (119 N. Y. 156, 158). There the *Reining* case was approved, but distinguished from the case there under consideration. The opinion of the court specifically

approved the reasoning of the court below. So to the report of the case in the lower court we go to see why *Harrigan* v. *City of Brooklyn* was distinguished from the *Reining* case. (See *Harrigan* v. *City of Brooklyn*, 5 N. Y. Supp. 673.) A more elaborate statement of the distinction between the *Brooklyn* cases and the *Reining* case is found in *Cavan* v. *City of Brooklyn* (5 N. Y. Supp. 758).

The court's opinion in *Cavan* v. *City of Brooklyn* (2 N. Y. Supp. 21) states a reason why the *Brooklyn* cases are distinguishable from the *Reining* case. It is this: That under the Brooklyn charter the claims are to be presented to the comptroller, and the comptroller had no authority to pay or adjust claims of the kind under consideration. By the Buffalo charter all claims whatsoever are required to be presented to the common council, which has authority to adjust all kinds of claims. (See, also, *Matter of Dasent*, 2 N. Y. Supp. 609; *Williams* v. *City of Buffalo*, 14 N. Y. St. Repr. 81; *Penfield* v. *City of New York*, supra.) The *Reining* case was under consideration also in the following cases: *Curry* v. *City of Buffalo* (57 Hun, 25); *Merz* v. *City of Brooklyn* (11 N. Y. Supp. 778); *Duff* v. *Mayor, etc., of New York* (60 N. Y. Super. Ct. [28 J. & S.] 29). And in no case that has been found has the decision in the *Reining* case been criticised.

Every case that has been cited by counsel, and every case that I have been able to find that seems to hold contrary to the *Reining* case, arises under a different charter wording.

I am unable to reach any other conclusion than that plaintiff's complaint must be dismissed. What is the amount of plaintiff's damage, whether plaintiff adopted the correct measure of damages, and other issues litigated upon the trial, are all questions that need not be now decided, in my view of the case.

Plaintiff's complaint dismissed, with costs, without prejudice to any other suit or proceeding plaintiff is advised to commence.